IN RE ESTATE OF MARY COLEMAN.

GERTRUDE KILLION, Appellee, v. JOSEPH R. SMITH, Executor, Appellant.

No. 46979.

JULY 29, 1947.

L. W. Powers and E. A. Norelius, both of Denison, for appellant.

E. A. Raun and Milo Jensen, both of Denison, for appellee.

SMITH, J.—I. The case was tried to the court without jury and under a stipulation that permitted the court to reserve rulings on objections to testimony. No such rulings were thereafter requested by either party nor were any made by the court. Appellant's only complaint of this is that "the court erred in failing to overrule objections of claimant to testimony offered by the administrator."

Only two instances of this character appear in the record. In each, claimant (appellee) urged the incompetence

of appellant's witness (decedent's son) under the "dead man statute." The failure to rule surely did not imply that the objection was sustained. The burden of demanding a ruling rests upon the one desiring it. Federal Schools v. Barry, 195 Iowa 703, 192 N. W. 816; Gaar, Scott & Co. v. Nichols, 115 Iowa 223, 88 N. W. 382; 4 C. J. S., Appeal and Error, section 322. Presumably this would be the one urging the objection or motion. It is said:

"If a party permits the court to proceed to judgment without action upon his motion or objection, he will be held to have waived the right to have the same acted upon." 3 Am. Jur., Appeal and Error, section 270.

If the trial court acted on that principle here it must have treated claimant's objections to the offered testimony as waived and if so the appellant had the benefit of the offered testimony. At any rate, we cannot assume the objections were sustained.

We do not commend the procedure adopted. But having been agreed to by the parties and no demand for ruling having been made by either we cannot hold that there is any ground for reversal for the trial court's neglect to rule.

II. Error is assigned upon the trial court's alleged failure to file findings of fact and conclusions of law as required by Rule 179, Iowa Rules of Civil Procedure. The judgment entry recites in substance that the evidence of claimant supports the allegations of her petition and that the executor failed to support the allegations of his answer; also that the contract claimed upon was executed by decedent and that claimant performed the services required by the contract and was entitled to recover.

It is true no formal findings of fact and conclusions of law were filed and the recitals in the judgment entry were hardly adequate. But Rule 179(b) provides:

"On motion * * * filed within the time allowed for a motion for a new trial, the findings may be enlarged or amended, and the judgment modified accordingly."

Appellant did not avail himself of this procedure. On the

contrary, when the proposed judgment entry was submitted to his attorneys they endorsed it, "O.K. as to form." He cannot now predicate reversible error upon the court's omission to file formal or more elaborate findings.

III. We have next to consider whether the evidence is sufficient to support the judgment. The proceedings were at law and not reviewable here de novo. In re Estate of Martens, 226 Iowa 162, 283 N. W. 885. The agreement to permit the court to reserve rulings on objections to testimony did not have the effect of transferring the case to equity. Petersen v. New York L. Ins. Co., 225 Iowa 293, 280 N. W. 521. The decision of the trial court is entitled to the same weight as is accorded the verdict of a jury. In re Estate of Moylan, 219 Iowa 624, 258 N. W. 766.

These propositions are conceded by appellant but he nevertheless questions the sufficiency of the evidence to support the decision here, citing numerous cases. Some were early cases developing or announcing the concept of the trial court's judicial discretion in granting new trials; others involved the question of setting aside verdicts on appeal because not supported by the evidence.

We find no analogy between the situation in any of these cases and the record here. Manifestly each case must stand on its own bottom. The general principle is well stated in appellant's brief, quoting from Pekarek v. Meyers, 159 Iowa 206, 210, 140 N. W. 409, 410:

> "Where there is dispute in the evidence, or where it appears from the evidence that honest minds searching for the truth might, on the record, reach different conclusions as to what the truth is, the case is for the jury * * *."

Appellant argues that the court erred in failing to hold as a matter of law: (1) that decedent's apparent signature to the contract was not genuine; (2) that confidential relation existed between decedent and claimant, imposing upon the latter the burden of negativing constructive fraud; and (3) that the written contract was superseded by a later arrangement between

claimant and decedent's guardian under which payment had been made.

It is to be said no question was ever raised as to the rendition or value of the services rendered.

IV. Decedent was an aged woman living at Carson, in Pottawattamie county. During the later years of her life she was quite helpless and unable to walk or care for herself. She was very heavy and had to be lifted into and out of bed from and to her wheel chair.

Claimant-appellee came from Dow City to care for her mother March 6, 1941. She remained with her until the latter died, December 18, 1944, except for a period of about three months in 1944 (July to October) when decedent was not at home. She originally came pursuant to a conversation with her brother, Roy Coleman, who lived in the vicinity of Oakland, about seven miles from Carson. What if any financial arrangement was made is not clear. Roy says she agreed to accept $5 per week. She denies having had any conversation with him about it.

The written contract relied on by appellee is dated October 1, 1943, over two and one-half years after she commenced work. It was drawn by a lawyer at the request of appellee, and he delivered it to appellee in duplicate. It provided for $20 per week from March 6, 1940. Appellee on the trial admitted the date should be March 6, *1941,* and amended her claim accordingly.

No witness testified to having seen decedent sign the contract. The lawyer who drew it and the banker at whose bank decedent did business for fifteen years testified and expressed the opinion that the signature in question was genuine. One copy was found at the bank after decedent died. Another witness testified that appellee showed her the contract in decedent's presence. This witness assisted in the care of decedent for over a year and was paid each week, usually by check written by decedent in her presence. She expressed the opinion that it was decedent's signature on the contract. Two handwriting experts differed over the question of the genuineness of the signature and two sons thought it a forgery. A sister-in-law

testified she twice saw appellee write checks for decedent and that appellee told her she (claimant-appellee) "could write just like her mother did." The weight of the testimony on each side was for the court in absence of a jury.

It is not necessary to elaborate further on the testimony. It is clearly in dispute. The decision of the court that decedent executed the contract has ample support.

V. Appellant contends a confidential relation existed between the parties sufficient to impose on appellee the burden of proving the contract was entered into in good faith and that she has failed to carry this burden. He also argues the contract was without consideration as to services rendered and paid for at a rate lower than provided by the contract and prior to its execution; also as to later services rendered pursuant to a contract with a subsequently appointed guardian of decedent.

This conclusion rests wholly upon the major premise that a special confidential relation existed because of decedent's helpless physical condition and her dependence upon appellee for physical care, and attention to business matters, including writing of checks. There is no evidence of mental dependence. Whether a confidential relation had arisen was itself a fact to be proven by the executor-appellant. It was not, under this record, established as a matter of law. We must assume, from the judgment entry, in the absence of a special finding, that the trial court found against appellant on this issue. Such a finding was not without support.

VI. During the approximately four-months' period already referred to when decedent was away from her own home she was at her son Roy's home at Oakland (near Carson) for perhaps a month, then at her granddaughter's at Dow City, Crawford county, for a time, and finally at the home of another son at Pierson, in Woodbury county.

While she was at Pierson her granddaughter's husband, Joseph R. Smith (now her executor), was appointed her guardian. That was August 29, 1944. In October 1944 he arranged for her return to her home at Carson. Appellee went to Dow City to see the guardian and some arrangement was made for

her to resume care of her mother. She told him at that time decedent had written her "to come home and stay with her [decedent]."

They both testify that appellee demanded $20 per week. The guardian says they finally agreed on $15, plus room and board, and that he thereafter paid her at that rate by check until decedent's death. Appellee says in effect that no amount was agreed on but she admits "he paid me some money, by check." She does not say how much and his testimony stands uncontradicted in that respect. There is no indication she was then relying on the written contract or that she mentioned its existence.

We are of the opinion that for approximately the last eight weeks appellee was working and was paid under a new arrangement and not under her written contract. The judgment rendered included pay for that period computed at $20 per week. It follows that the allowance is in error to that extent.

We have no power to modify the judgment, though the error involves a reasonably certain amount. If claimant (appellee) shall, within thirty days, file a remittitur of $160, reducing the judgment to $1,980.74, the case will stand affirmed at appellant's costs. Otherwise it will be reversed.—Affirmed on condition.

OLIVER, C. J., and BLISS, HALE, GARFIELD, MANTZ, MULRONEY, and HAYS, JJ., concur.