**Harry MICHAEL, Appellee,**

v.

**MERCHANTS MUTUAL BONDING COMPANY, Appellant.**

**No. 2–57958.**

Supreme Court of Iowa.

March 16, 1977.

**532**

Smith, Peterson, Beckman, Willson & Peterson by Frank W. Pechacek, Jr., Council Bluffs, for appellant.

Porter, Heithoff, Pratt & Reilly, Council Bluffs, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

UHLENHOPP, Justice.

This appeal involves the question of the liability of a surety on a warehouseman's bond. Other appeals involving the same bond are *Avoca State Bank v. Merchants Mut. Bonding Co.,* 251 N.W.2d 533 (Iowa), and *True v. Merchants Mut. Bonding Co.,* 251 N.W.2d 543 (Iowa).

The facts involving the principal on the bond, Claude W. Myler, are set out in the *Avoca State Bank* case. Plaintiff Harry Michael is an accountant who also operates a farm. Between December 16 and 22, 1971, he delivered 14,070.3 bushels of wet corn to Myler's elevator. The parties are in dispute as to whether Michael sold the corn to Myler or delivered it for storage. The record contains substantial evidence both ways on the issue. Myler contends he quoted Michael a price and Michael delivered the corn for sale accordingly, while Michael claims he stored the corn. After Michael delivered, the price of corn advanced. About two weeks following delivery by Michael, Myler sold and delivered the corn to a terminal elevator. The trial court did not make a finding either way on the sale or storage issue, because under its view of the law the result would be the same either way.

Myler testified that Michael did not call for his check and so sometime later Myler mailed it to him. The mailing date is not clear from the testimony but was probably in the latter part of March 1972, about three months after Michael delivered the corn. Michael returned the check early in June 1972, contending he had stored the corn and demanding a warehouse receipt. Myler became insolvent and closed his doors in September 1972.

Michael subsequently sued the surety on Myler's warehouseman's bond, defendant Merchants Mutual Bonding Company. The trial court held for Michael for the value of the corn ($12,944.68), and interest. Merchants appealed. Myler's undisputed liability to Michael is not involved in the appeal.

I. Merchants first contends that the trial court erred in overruling its motions relative to absence of indispensable parties. For the reasons stated in the *Avoca State Bank* case, we do not sustain this assigned error. What we said there is applicable here, with reference to further proceedings if the *Avoca State Bank* or Michael attempts to hold Merchants for more than the amount of Merchants' bond.

II. Merchants next contends that the trial court erred in rendering no findings or conclusions on its defenses of estoppel and waiver. The difficulty here is that Merchants did not make a record for appeal on this assigned error by moving the trial court to enlarge its findings and conclusions under rule 179(b) of the Rules of Civil Procedure. *Fjelland v. Wemhoff,* 249 N.W.2d 634 (Iowa); *Thomas Truck & Caster Co. v. Buffalo Caster & Wheel Corp.,* 210 N.W.2d 532 (Iowa). This assigned error presents nothing for review.

III. As to the merits, little question seems to exist that if Michael *stored* the corn, he can recover; plainly the warehouseman's bond would cover. But we have no fact finding on that issue. We therefore examine the question whether the bond also covers if Michael *sold* Myler the corn. For this examination we assume arguendo that Michael sold the corn to Myler.

We hold today in the True case that a warehouseman's bond does not cover a cash sale of grain. But § 543.17 in the Code of 1971 was in effect at the time of the present events. Michael relies on that section, the trial court cited it, and our reference will be to it, but since it has subsequently been substantially changed we will not dwell on it at length. The section dealt with grain which an elevator *retained,* not grain which, as here, the elevator accepted and then shipped out. Under that section, generally a licensed warehouseman could retain bulk (unsacked) grain for 29 days after accepting it but then had to pay for it or issue warehouse receipts for it—unless the parties entered into a written deferred payment agreement. The section has no application here, as Myler retained the grain only about two weeks.

Michael must therefore stand on his assertion he delivered the grain to Myler for storage. We return the case to district court for a finding of fact on that issue, upon the record already made. If the trial court finds from the record that Michael delivered for storage, the court shall let stand the judgment heretofore entered. But if the trial court finds from the record

that Michael delivered for sale, it shall dismiss Michael's petition at his costs.

Appeal costs are divided between the parties.

REVERSED AND REMANDED.